**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **ROBIN MIDDLETON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| **SERGEANT ROBERT DEBLASIS,** | : | **NO. 11-cv-4124-JD** |
| **CORPORAL KAREN CHURCH, and** | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **Defendants.** | : | |

_____

**DuBOIS, J.**                                                                       **December 30, 2011**

**M E M O R A N D U M**

**I.        INTRODUCTION**

      This is an employment discrimination case. Plaintiff Robin Middleton is a Philadelphia

Police Officer. She alleges that defendants discriminated against her by refusing to allow her to

attend church services while on duty, making derogatory comments to and about her, and

refusing to make an injury report or give her a referral to the hospital when she was injured while

on duty. She asserts the following causes of action:

      Count I—First Amendment retaliation;

      Count II—racial discrimination in violation of 42 U.S.C. § 1983;

      Count III—municipal liability under § 1983;

      Count IV—employment discrimination and retaliation under Title VII of the Civil Rights

      Act of 1964 ("Title VII"); and

      Count V—employment discrimination and retaliation under the Pennsylvania Human

      Relations Act ("PHRA").

      Presently before the Court is defendants' Motion to Dismiss. For the reasons that follow,

the Court grants in part and denies in part defendants' motion.

## II.    BACKGROUND[1]

Plaintiff is a black female and practicing Christian Baptist. (Compl. ¶ 12.) In February 2007, defendant City of Philadelphia hired her as a police officer and assigned her to the 9th District. (Id. ¶ 11.) At all relevant times, defendant Sergeant Robert Deblasis ("Deblasis") was one of plaintiff's supervisors in the 9th District. (Id. ¶ 13.) Corporal Karen Church ("Church") has also been one of plaintiff's supervisors since transferring to the 9th District in January 2010. (Id. ¶ 14.)

### A.    Deblasis's Comments

From 2008 to November 2010, Deblasis would "constantly and persistently make comments and gestures to [p]laintiff regarding her religious affiliation." (Id. ¶ 15.) For example, Deblasis would say "here comes the blessed one" and "you have God in your favor" when plaintiff entered the room. (Id.) He would also gesture in a cross motion and ask plaintiff if God blessed her with her house and car. (Id.)

### B.    Deblasis's and Church's Refusal to Allow Plaintiff to Attend Church Services

The established practice in the 9th District was to allow officers to attend church services during their daytime shifts if there was low activity and if they notified the sergeant on duty. (Id. ¶ 16.) Until October 10, 2010, plaintiff had always attended church services while on duty if there was low activity. (Id.) On or about that date, Church suddenly refused to allow plaintiff to attend church services. (Id.) Deblasis was aware of Church's action. (Id.)

---

[1] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiff's complaint to be true.

2

White male officers in the 9th District were allowed to attend church services while on duty. (Id. ¶ 18.) Plaintiff told Church that she felt Church was treating her unfairly. (Id. ¶ 16.)

### C.      Church's October 11, 2010, Statement About Plaintiff

On or about October 11, 2010, plaintiff heard Church make the following statement in reference to an incident that occurred the day before: "Who the fuck does she think she is, asking radio for Sergeant Deblasis [to] contact [p]laintiff on her cell phone." (Id. ¶ 19.) Plaintiff responded by saying "Ma'am I'm right here, you are talking about me and I'm right here." (Id.) Church responded "I am just repeating what [Deblasis] said." (Id.)

### D.      Church's Allegations to the EEO Unit

On or about October 11, 2010, after the incident described above, Deblasis had a meeting with Church and plaintiff to discuss Church's allegation that plaintiff made a racial remark about Church. (Id. ¶ 20.) According to plaintiff, Church was aware that the allegation was untrue. (Id.) The allegation was reported to the police department's EEO Unit, and then to Internal Affairs for further investigation. (Id.) Deblasis then accused plaintiff of being a "scam artist" and called her "the blessed one" again. (Id.) Deblasis also told plaintiff that she "wouldn't be going to church anymore." (Id.) Plaintiff again complained to Deblasis and Church that they were treating her unfairly by not allowing her to attend church services. (Id.)

On an unknown date,[2] Church called the police department's EEO Unit to complain that plaintiff was harassing her. (Id. ¶ 23.) Plaintiff alleges that Church was aware that this allegation was untrue. (Id.)

_____

[2] Although this allegation is undated, the factual allegations in the Complaint are set forth in chronological order. This allegation was made between Plaintiff's November 29, 2010, reassignment and the February 1, 2011 memo from Captain Allan. See infra section II.F. Thus,

###### E.    Plaintiff's EEOC Complaint

On or about October 18, 2010, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the City of Philadelphia Police Department alleging employment discrimination on the basis of race, sex, and/or religion and retaliation for opposing the perceived discrimination. (Id. ¶ 21.)

###### F.    Complaints to Captain[3]

In or about November 2010, plaintiff complained to a police captain about the discrimination described above. (Id. ¶ 22.) On or about November 29, 2010, plaintiff transferred to a different platoon to avoid interaction with Deblasis or Church. (Id.) On or about February 1, 2011, Captain Allan of the 9th District and the EEO Unit issued plaintiff a memo instructing her to have minimal contact with Deblasis and Church. (Id. ¶ 24.) On or about February 9, 2011, plaintiff met with Captain Allan to discuss the alleged discrimination. (Id. ¶ 25.)

###### G.    March 11, 2011, Injury

On or about March 11, 2011, plaintiff was injured on duty. (Id. ¶ 26.) Church and Deblasis were aware of the injury and that plaintiff was in the hospital, but failed to make an injury report or give plaintiff a referral to the hospital in violation of police directives. (Id.) The hospital asked plaintiff for a referral, and plaintiff had to get one from her former sergeant. (Id.) Since March 12, 2011, plaintiff has been out of work on "injured-on-duty" status. (Id. ¶ 27.)

---

the Court infers that Church alleged to the EEO Unit that plaintiff was harassing her at some time between those two dates.

[3] The Complaint states only that plaintiff complained "to Captain." (Compl. ¶ 22.)

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a civil plaintiff must allege facts that "'raise a right to relief above the speculative level.'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assess "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

### IV.    DISCUSSION

#### A.    Count I—First Amendment Retaliation

Plaintiff claims that defendants unlawfully retaliated against her for speaking out against the discriminatory actions of Deblasis and Church. "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Baldassare v. New Jersey, 250

F.3d 188, 194 (3d Cir. 2001). However, that right is not absolute. A court must balance the right of the employee to speak against the employer's "right to exercise some control over its work force." Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003). To determine whether a public employer unlawfully retaliated against an employee, courts employ a three-step analysis. First, plaintiff must show that the First Amendment protects the activity in question. Second, the Court must decide if the employer took a retaliatory action that was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Third, plaintiff must show "that the protected activity was a substantial or motivating factor in the alleged retaliatory action." Baldassare, 250 F.3d at 195. Because the Court finds that the First Amendment does not protect plaintiff's speech, it need not reach the latter two steps.

### 1.     Protected Activity

The question whether a public employee's speech falls within the First Amendment's protection is a question of law. Azzaro v. Cnty. of Allegheny, 110 F.3d 968, 975 (3d Cir. 1997). The First Amendment protects only speech on matters of "public concern."[4] Connick v. Myers, 461 U.S. 138 (1983). "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." Baldassare, 250 F.3d at 195. "[M]erely personal grievances" cannot constitute

---

[4] If the speech is a matter of public concern, "[t]he plaintiff must [also] 'demonstrate his/her interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees'" in order to trigger the First Amendment's protection. Brennan, 350 F.3d at 413 (quoting Baldassare, 250 F.3d at 195). Because the Court finds that plaintiff's speech was not on a matter of public concern, it need not reach this second question.

public speech. Feldman v. Phila. Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1994). This requirement applies to a plaintiff's speech as well as conduct that falls under the Petition Clause of the First Amendment.[5] Borough of Duryea, Penn. v. Guarnieri, __ U.S. __, 131 S. Ct. 2488 (2011).

Plaintiff asserts four instances of protected activity. First, on October 10, 2010, plaintiff complained to Deblasis and Church about not being allowed to attend church services while on duty despite the fact that white male officers regularly attended church services. Second, on October 11, 2010, plaintiff again complained to Deblasis and Church about not being allowed to attend church services. Third, on October 18, 2010, plaintiff filed a complaint with the EEOC regarding the alleged discrimination. Fourth, in November 2010, plaintiff complained to a captain in the 9th District and the police department's EEO Unit regarding the alleged discrimination.

Claims of sexual and racial discrimination can constitute matters of public concern, even if plaintiff makes those claims in private. See Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 415–16 (1979); Azzaro, 110 F.3d at 978. In Azzaro, the Third Circuit held that an employee's internal complaint that a supervisor sexually harassed her constituted speech on a matter of public concern. Azzaro, 110 F.3d at 968. In doing so, the Third Circuit declined to give controlling significance to the question whether plaintiff alleged a "systemic problem" relating to the discrimination. Id. at 980. However, in a footnote, the Azzaro court stated that the situation in that case did not involve "a complaint about an isolated incident . . . on the part of a non-

---

[5] Plaintiff's "speech" in this case falls under both the Speech Clause and the Petition Clause of the First Amendment. Her complaints to supervisors are "speech" but her EEOC complaint is a petition. Because they relate to the same perceived discrimination and because the standard is identical for both, for convenience, this Memorandum will refer to all of plaintiff's protected activity as her "speech."

supervisory co-worker." Id. at 978 n.4. Further, the Azzaro court noted that the alleged conduct

in that case was "relevant to the electorate's evaluation of the performance of the office of an

elected official," because the person who committed the alleged harassment was the direct

subordinate of an elected official. Id. at 978.

Later cases involving allegations unrelated to the performance of an elected official have

seized on this distinction from Azzaro and required plaintiff's speech to allege a widespread

pattern of discrimination. See, e.g., Miles v. City of Phila., No. 11-4040, 2011 WL 4389601, at

*4 (E.D. Pa. Sept. 21, 2011) (holding that plaintiff did not speak on a matter of public concern

because "as pled, her allegations [did] not implicate defendants in a pattern of conduct directed at

anyone other than her"); McCartney v. Penn. State Police, No. 09-CV-1817, 2011 WL 3418381,

at *31 (M.D. Pa. March 9, 2011) (holding that plaintiff must allege a "wider pattern of

inappropriate conduct" in order for allegations to constitute speech on a matter of public

concern), report and recommendation adopted by No. 09-CV-1817, 2011 WL 3293283 (M.D. Pa.

July 29, 2011). In Zelinski v. Pennsylvania State Police, the Third Circuit held that a police

officer's complaints of isolated instances of sexual harassment by another officer were not

related to matters of public concern. In so holding, the Zelinski court relied on the fact that

neither the officer who committed the harassment nor the supervisor that allegedly condoned it

"work[ed] directly under any elected official, and their actions d[id] not appear relevant to the

electorate's evaluation of the performance of the office of any elected official." 108 F. App'x

700, 707–08 (3d Cir. 2004); see also Hartley v. Pocono Mt. Reg'l Police Dept., No. 3:CV-04-

2045, 2007 WL 906180, at *5 (M.D. Pa. March 22, 2007) (citing Zelinski). But see Azzaro, 110

F.3d at 978.

Similarly, this case does not involve an allegation of misconduct committed by an elected official or his or her direct subordinate. As such, it is distinguishable from Azzaro and more akin to Zelinski, Miles, and McCartney. Plaintiff has not claimed that any other officers were subject to discrimination, and thus has failed to allege a "wider pattern of inappropriate conduct." McCartney, 2011 WL 3418381, at *31. Instead, plaintiff "complain[s] solely about [her] own 'abuse' and mistreatment by superiors," which is not a matter of public concern. Bell, 275 F. App'x at 159. Further, the conduct alleged by plaintiff was limited in scope and duration. Cf. Bianchi v. City of Phila., 183 F. Supp. 2d 726, 746 (E.D. Pa. 2002) (involving numerous cases of discriminatory conduct including physical threats and continuing for more than a year).

For these reasons, the Court concludes that plaintiff did not speak on a matter of public concern. Plaintiff's First Amendment retaliation claim is thus dismissed.

### B.    Count II—Racial Discrimination in Violation of 42 U.S.C. § 1983

Plaintiff claims that Deblasis and Church discriminated against her because of her race in violation of 42 U.S.C. § 1983. Equal protection discrimination claims under § 1983 are evaluated under the same framework as Title VII claims. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993); accord Stewart v. Rutgers, the State Univ., 120 F.3d 426, 432 (3d Cir. 1997). To state a claim for racial discrimination under Title VII or § 1983, a plaintiff must show the following: (1) that plaintiff belonged to a protected class, (2) that plaintiff was qualified for the position, (3) that plaintiff was subject to an "adverse employment action" despite her qualifications, and (4) that circumstances exist from which a court can infer discriminatory action. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). Further, under § 1983, a plaintiff must show discriminatory purpose on the part of defendants. Wayte v. United States, 470 U.S. 598, 609 (1985).

With respect to plaintiff's § 1983 claim, defendants argue only that plaintiff failed to allege that she was subject to an "adverse employment action." Sarullo, 352 F.3d at 797. For purposes of discrimination claims, an adverse employment action is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Pagan v. Gonzalez, 430 F. App'x 170, 172 (3d Cir. 2011) (quoting Durham Life Ins. Co. v. Evans, 166 F.3d 139, 152-53 (3d Cir. 1999)). Plaintiff alleges five actions that she claims are "adverse employment actions": (1) that Deblasis continuously made comments to her regarding her religious affiliation, (2) that Church made degrading and unprofessional remarks about plaintiff to other officers, (3) that she was denied the right to attend church services, (4) that Church knowingly made false EEO Unit complaints against her, and (5) that Church and Deblasis failed to give her a referral to the hospital.

## 1. Deblasis's Continuous Comments and Church's Degrading and Unprofessional Remarks

As to the first two actions that plaintiff claims were adverse employment actions, the Third Circuit has held that "unnecessary derogatory comments" do not rise to the level of "adverse employment actions." Robinson v. City of Phila., 120 F.3d 1286, 1301 (3d Cir. 1997).[6] This is because such comments do not implicate "the employee's compensation, terms, conditions, or privileges of employment, deprive[] him or her of employment opportunities, or

---

[6] The Robinson court was analyzing the "adverse employment action" prong in the context of a Title VII retaliation claim. At the time it did so, the analysis was the same as under a racial discrimination claim. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (changing the standard for retaliation claims only).

adversely affect[] his or her status as an employee." Id. at 1300. Thus, neither Deblasis's nor Church's comments constitute adverse employment action.

### 2.    Refusing to Allow Plaintiff to Attend Church Services

Plaintiff alleges that refusing to allow her to attend church services while on duty was an adverse employment action. The Court agrees. Allowing officers to attend church services while on duty is akin to a common benefit of employment: time off. It is no different than defendants giving white males time off but refusing to do the same for plaintiff.

### 3.    Church's False EEO Unit Reports

Letters of reprimand or "unsubstantiated oral reprimands" are not adverse employment actions. Robinson, 120 F.3d at 1301. This is the case even if the letter of reprimand is "permanent." Mieczkowski v. York City Sch. Dist., 414 F. App'x 441, 445 (3d Cir. 2011). Plaintiff has not alleged that Church's EEO Unit reports ever resulted in any negative action against plaintiff. Accordingly, Church's allegedly false EEO Unit reports are not adverse employment action.

### 4.    Hospital Referral

Plaintiff does not explain how the failure of Church and Deblasis to give her a hospital referral or injury report affected her employment status. Further, the fact that plaintiff was able to get the referral from her former supervisor means that plaintiff was not actually affected in any way. See Mieczkowski, 414 F. App'x at 445 (requiring an actual effect on plaintiff's employment status to constitute adverse employment action.) Thus, the Church's and Deblasis's failure to give plaintiff a referral or make an injury report is not an adverse employment action.

11

### 5.    Conclusion

Plaintiff has alleged an adverse employment action: Deblasis's and Church's refusal to allow her to attend church services while on duty. Thus, defendants' motion to dismiss is denied as to plaintiff's § 1983 racial discrimination claim. However, that claim is limited to the refusal to allow plaintiff to attend church services while on duty, as the other four alleged actions do not constitute adverse employment actions.

### C.    Count III—Municipal Liability Under § 1983

Generally, a municipality is not liable for its official's or employee's violations under § 1983. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). However, a municipality can be held liable under § 1983 when "those whose edicts or acts may fairly be said to represent official policy" adopt a "policy or custom" resulting in an actionable § 1983 injury. Id. The Third Circuit has identified three circumstances in which "[a]n individual's conduct implements official policy or practice":

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

Hill v. Borough of Kutztown, 455 F.3d 255, 245 (3d Cir. 2006). Plaintiff alleges that defendants Deblasis and Church were acting "pursuant to a formal government policy or a standard operating procedure." Id. Further, plaintiff alleges that Deblasis and Church, as supervisors in the 9th District, had "final policy-making authority such that [their] conduct represents official policy." Id. Plaintiff does not allege that the City delegated authority to Deblasis or Church to speak on its behalf, or that the City ratified their actions.

### 1.      Policy or Custom

Plaintiff alleges that the City "failed to properly supervise and/or train its supervisors, including [Deblasis and Church], in civil rights, employment laws, and to the proper use of the City's disciplinary rules, as so to avoid deprivation of civil rights or employment laws." (Compl. ¶ 46.) Further, plaintiff alleges that this failure to supervise and/or train was "known by the City to exist and known to likely lead to deprivation of civil rights."[7] (Id.) The fact that Deblasis and Church faced no disciplinary action for their conduct supports plaintiff's claim. The Supreme Court has held that a municipality may be subject to § 1983 liability for failing to train its employees if "the failure to train amounts to deliberate indifference to the rights of [plaintiff]." City of Canton v. Harris, 489 U.S. 378, 388 (1989); accord Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting City of Canton). Thus, plaintiff has stated a claim against the City under Monell with respect to the City's failure to train.

### 2.      Acts Committed by an Individual with Final Policy-Making Authority

Plaintiff alleges that Deblasis and Church were "policymakers" under Monell, and thus, their discriminatory conduct can be imputed to the City. Plaintiff argues that Deblasis and Church were "policymakers" because they were "the District supervisors and had final authority over when and if offices [sic] in their squad would be allowed to attend religious services on their lunch break." (Pl.'s Resp. Def.'s Mot. Dismiss 13.) The Court disagrees.

---

[7] Plaintiff also alleges that the 9th District had an established custom of letting white officers go to church services while on duty. However, the only custom plaintiff has alleged with respect to church services is the 9th District's practice of allowing all officers to attend church services while on duty. The discriminatory action she alleges—Deblasis's and Church's refusal to allow her to attend services—is a break from that custom committed by isolated employees, and thus, not actionable against the City under Monell unless Deblasis and Church were "policymakers" under Monell, which, as explained below, they were not.

"The question of who is a 'policymaker' is a question of state law." <u>Andres v. City of Phila.</u>, 895 F.2d 1469, 1481 (3d Cir. 1990) (citing <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 142 (1988)). Thus, a person is a "policymaker" only if, under the operative state law, he or she has "final policy-making authority." <u>Hill</u>, 455 F.3d at 245. Plaintiff's argument that Deblasis and Church are policymakers is undercut by her allegation in the Complaint that "the commanding officer at the 9th District failed to report the alleged acts of discrimination, failed to investigate, and failed to take disciplinary action against the offenders." (Compl. ¶ 47.) The fact that there was a commanding officer whose job it was to oversee Deblasis and Church evidences the fact that they do not have final policy-making authority. Further, Deblasis is a sergeant and Church is a corporal; the chain of command belies plaintiff's argument.

### 3. Conclusion

Plaintiff has successfully stated a claim against the City under <u>Monell</u>, but only for the City's alleged deliberate failure to train employees on civil rights, employment law, and/or the proper use of disciplinary rules.

### D. Count VI—Employment Discrimination and Retaliation Under Title VII

Plaintiff asserts a claim for employment discrimination and retaliation against the City of Philadelphia under Title VII, 42 U.S.C. § 2000e <u>et seq.</u> Plaintiff alleges that defendants discriminated against her based on her race, gender, and/or religion. Further plaintiff alleges that defendants retaliated against her for speaking out against this discrimination.

### 1. Title VII Discrimination

As explained above, plaintiff's Title VII racial, sexual, and/or religious discrimination claims are evaluated under the same framework as equal protection claims under § 1983. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 n.1 (1993); <u>accord</u> <u>Stewart v. Rutgers, the State</u>

Univ., 120 F.3d 426, 432 (3d Cir.1997). The only difference is the added requirement in § 1983

claims that a defendant have a discriminatory purpose, see Wayte v. United States, 470 U.S. 598,

609 (1985), which is not at issue in this case. Thus, the analysis of plaintiff's § 1983 claims in

Section IV.B, supra, applies with equal force in the Title VII discrimination context and

defendants' motion to dismiss is denied as to plaintiff's Title VII discrimination claim.[8]

However, as under § 1983, plaintiff's Title VII claim is limited to the refusal to allow plaintiff to

attend church services while on duty, as the other four alleged actions do not constitute adverse

employment actions.

      Defendants also focus on plaintiff's religious discrimination claim under Title VII,

arguing that it fails because "she has not alleged facts sufficient to establish that [d]efendants

were aware of her religion before any alleged adverse employment action and because she has

not asserted a single fact that would raise an inference of religious discrimination." (Mem. Law

Supp. Def. Robert Deblasis, Karen Church and the City of Phila.'s Mot. Dismiss Pl.'s Compl.

18.) The Court rejects this argument. Although the complaint does not mention the religions of

the other officers who were permitted to attend church services while on duty, plaintiff does

allege that Deblasis continuously and frequently made derogatory comments regarding plaintiff's

religion beginning as early as 2008. These comments permit the inference that defendants' not

allowing plaintiff to attend religious services while on duty constituted religious discrimination.

See Sarullo, 352 F.3d at 797 (requiring circumstances from which a court can infer

_____

[8] Plaintiff's § 1983 claim alleges only racial discrimination while plaintiff asserts her Title VII
claim for racial, sexual, and religious discrimination. However, the facts giving rise to both
claims are identical, so the Court will treat them as such.

discriminatory action). These comments also demonstrate that defendants were aware of plaintiff's religion before any alleged adverse employment action.

### 2.    Title VII Retaliation

"To establish a prima facie retaliation claim under Title VII, the plaintiff must demonstrate that (1) he engaged in protected activity; (2) after or contemporaneous with that protected activity, he was subject to a materially adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." Lebofsky v. City of Phila., 394 F. App'x 935, 938 (3d Cir. 2010) (footnote omitted) (citing Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007)).

Defendants argue that plaintiff's complaints on October 10, 2010, and October 11, 2010, regarding the alleged discriminatory treatment are not protected under Title VII. Defendants also argue that plaintiff was not subject to a materially adverse employment action. Defendants do not argue that plaintiff has failed to fulfill the third requirement.

### a.    Protected Activity

Protected activity may consist of "formal charges of discrimination as well as informal protests of discriminatory employment practices, including making complaints to management." Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir.1995) (internal quotations omitted). However, in order to constitute protected activity, a complaint "must be specific enough to notify management of the particular type of discrimination at issue." Sanchez v. SunGard Availability Servs., LP, 362 F. App'x 283, 288 (3d Cir. 2010) (citing Barber, 68 F.3d at 702, and holding that plaintiff's report that he was being "discriminated against, harassed, and bullied" was "too vague to constitute protected activity.")

Plaintiff asserts four instances of protected activity: (1) her statement on October 10th in which she complained about unfair treatment after defendants refused to allow her to attend church services, (2) her statement on October 11th to the same effect, (3) her October 18th EEOC complaint, and (4) her November 2010 complaint to Captain Allan. Defendant challenges only the first two as being outside the scope of Title VII's protection.

Plaintiff alleges that on both October 10, 2010, and October 11, 2010, she "opposed and spoke out against the sex and/or race and/or religious discrimination by stating to Cpl. Church that she felt she was being treated unfairly by not being allowed to attend church services." (Compl. ¶ 16.) As pleaded, one can reasonably infer that plaintiff's statements were enough to notify defendants of her displeasure with their decision and inform them that plaintiff believed that she was being discriminated against on the basis of "sex and/or race and/or religi[on]." This stands in stark contrast to the cases defendants cite, where the plaintiffs failed to specifically allege unlawful discrimination. See Bell v. Quest Diagnostics, No. 04-5005, 2006 WL 305436, at *9 (E.D. Pa. Feb. 7, 2006) (finding no protected activity because plaintiff "never once mentioned that sex or religion were the bases for her objections"). Thus, all four of plaintiff's alleged protected activities qualify as such under Title VII.

### b.    Materially Adverse Employment Action

To make out her claim of unlawful retaliation, plaintiff must also "show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006) (quoting Burlington N., 548 U.S. at 68); accord Warenecki v. City of Phila., No. 10-1450, 2010 WL 4344558, at *10 (E.D. Pa. Nov. 3, 2010). This is broader than the analogous requirement in the discrimination

context because it "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N., 548 U.S. at 64.

Plaintiff alleges five retaliatory actions: (1) that Deblasis continuously made comments to her regarding her religious affiliation, (2) that Church made degrading and unprofessional remarks about plaintiff to other officers, (3) that she was denied the right to attend church services, (4) that Church knowingly made false EEO Unit complaints against her, and (5) that Church and Deblasis failed to give her a referral to the hospital.

### i.      Deblasis's Comments

First, plaintiff argues that Deblasis retaliated against her by calling her "the blessed one" and making other disparaging comments. However, plaintiff alleges that this conduct began before plaintiff engaged in any protected activity. Plaintiff does not allege that the conduct grew worse or changed after plaintiff engaged in the protected activity. Thus, these comments are not retaliatory.

### ii.      Refusing to Allow Plaintiff to Attend Church Services

Second, plaintiff alleges that defendants retaliated against her by refusing to allow her to attend church services while on duty. Again, this conduct occurred before plaintiff engaged in any protected activity. In fact, the protected activity was a response to defendants' decision not to allow plaintiff to attend church services while on duty. Thus, defendants could not have retaliated by refusing to allow plaintiff to attend church services while on duty.

### iii.      Church's Comments

Third, plaintiff alleges that Church made degrading and unprofessional remarks about plaintiff to other officers on October 11, 2011. Church's comments cannot be retaliatory under Title VII because statements, on their own, are not likely to "deter a person of ordinary

firmness." <u>McKee v. Hart</u>, 436 F.3d 165, 170 (3d Cir. 2006) (holding that admonishments, deemed "harassment" by plaintiff, were not sufficient to constitute retaliation in the First Amendment context, in which the same standard applies, <u>see</u> <u>Gerald v. Locksley</u>, 785 F. Supp. 2d 1074, 1103 n.3 (D.N.M. 2011)).

### iv.     Church's False EEO Unit Report

Fourth, plaintiff argues that Church retaliated against her by knowingly making false allegations to the EEO Unit that plaintiff made a racial remark about Church and that plaintiff was harassing Church. The filing of a lawsuit or other similar official action can constitute an adverse employment action under Title VII, provided that the employer does so in bad faith. <u>See</u> <u>Schneck v. Saucon Valley Sch. Dist.</u>, 340 F. Supp. 2d 558, 572–73 (E.D. Pa. 2004). In this case, plaintiff alleges bad faith by asserting that Church knew her EEO Unit complaints were false. Thus, this constitutes an adverse employment action under the Title VII retaliation standard.

### v.     Hospital Referral

Finally, plaintiff argues that Deblasis and Church retaliated against her by failing to provide her with an injury report for the hospital or a referral to the hospital after plaintiff was injured while on duty. This qualifies as an adverse action under Title VII's retaliation standard. Plaintiff's injury was allegedly serious enough to warrant a visit to a hospital yet defendants allegedly refused to refer her to a hospital or provide an injury report for the hospital. Such refusal would "dissuade a reasonable worker from making or supporting a charge of discrimination" in the future. <u>Id.</u> at 68. Thus, failing to provide an injury report or give plaintiff a referral to the hospital constitutes unlawful retaliation under Title VII.

c.       Conclusion

The Court denies defendants' Motion to Dismiss with respect to plaintiff's Title VII

retaliation claim. However, that claim is limited to Church's EEO Unit reports and Church's and

Deblasis's failure to give plaintiff a hospital referral or file an injury report.

E.       Count V—PHRA

Plaintiff claims violations of the PHRA based on the same facts described in the

preceding sections of this Memorandum. "The legal standard for claims under the PHRA is the

same as those brought under Title VII." Bradley v. Aria Health, No. 10-5633, 2011 WL

2411026, at *3 n.3 (E.D. Pa. June 15, 2011) (citing Weston v. Penn., 251 F.3d 420, 426 n.3 (3d

Cir. 2001)). Thus, the Court's analysis with respect to each of plaintiff's claims under the PHRA

is identical to the analysis under Title VII (Count IV). See supra, section IV.D.

V.       CONCLUSION

Defendants' Motion to Dismiss is granted in part and denied in part. The Court grants the

motion with respect to Count I of the Complaint because plaintiff did not speak on a matter of

public concern. The Court denies the motion with respect to all other counts. However, Count II

is limited to defendants' refusal to allow plaintiff to attend church services while on duty; Count

III is limited to the City of Philadelphia's deliberate failure to train its police officers; plaintiff's

Title VII discrimination claim (Count IV) is limited to defendants' refusal to allow plaintiff to

attend church services while on duty; plaintiff's Title VII retaliation claim (Count IV) is limited

to Church's EEO Unit complaints and defendants' refusal to give plaintiff a hospital referral or

file an injury report; and Count V is limited in the same way as Count IV.

An appropriate Order follows.